**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ZEHUA CHEN and LULU HE,

Petitioners,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

No. 5:26-cv-06439 DSR

**ORDER GRANTNG PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

## 1. INTRODUCTION

This is a Petition for Writ of Habeas Corpus by two noncitizens – a husband and wife who are parents to two school-aged children. The mother was arrested and taken into detention by Immigration and Customs Enforcement ("ICE") officers after she dropped the children off at school. The father was arrested in the street in front of his home when he went to look for the mother after she did not return from the school drop off as expected and did not answer his call to check on her. After reviewing all papers submitted by both sides, and for the reasons discussed below, the Petition is GRANTED and Respondents are ordered to release both Petitioners from immigration detention immediately.

## 2. PROCEDURAL BACKGROUND

On October 30, 2026, Petitioners Zehua Chen and Lulu He, noncitizens from China who have been detained in ICE custody since their respective arrests on October 26, 2026, filed a counseled Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2241 challenging the legality of their ongoing detention. See Doc. No. 1.[1] The Petition names as Respondents the Warden of the Adelanto ICE Processing Center where both Petitioners are presently detained, the Los Angeles Field Office Director of ICE's Enforcement and Removal Operations unit, the Acting Director of ICE, and the Secretary of Homeland Security, each in their official capacity. The Petition seeks a writ compelling Respondents to release each Petitioner immediately from immigration custody.

Concurrently with filing their Petition, Petitioners voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). See Doc. No. 4. The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases, dated March 26, 2026. See Doc. No. 6 at ECF. p. 9; see also Doc. No. 14.

Pursuant to General Order 26-05, the Clerk of Court served the Petition, along with a Notice of that General Order, on Respondents on October 30, 2026. See Doc. No. 6. Under the expedited briefing schedule established in that General Order, Respondents were directed to file a Notice of Appearance by their counsel in this case no later than November 2nd, and an Answer to the Petition no later than November 6th. Id. Respondents filed a Notice of Appearance on November 4th, see Doc. No. 7, and timely filed their Answer on November 6th, see Doc. No. 8. Petitioners filed their Reply on November 7th. See Doc. No. 9.

---

[1] Petitioners request that they be permitted to join their respective requests for habeas corpus relief into the same Petition under Habeas Rules 1(b) and 12 and Federal Rule of Civil Procedure 20. See Pet. (Doc. No. 1) at Part II.B. The argue such joinder is appropriate because their respective claims share common questions of law and fact, and that joinder is fundamentally fair and will avoid prejudice. Id. Respondents do not object to the joinder of Petitioners' respective claims. The Court finds such joinder appropriate and will proceed to consider each Petitioner's claims within this case, but will discuss the particular facts appliable to each Petitioner separately, to the extent they differ.

In their Reply, Petitioners raised a new argument not stated in the Petition – that their arrest and detention violates due process because they did not receive notice and a hearing before being detained. To give Respondents an opportunity to address that new argument, the Court entered an Order on November 9, 2026, deeming the Reply to be an amendment to the Petition, permitting Respondents to file a Supplemental Answer thereto no later than November 13th, and allowing Petitioners to file a response to the Supplemental Answer by November 17th. See Doc. No. 11. Respondents filed their Supplemental Answer on November 9th, and Petitioners filed their Reply thereto late that night. See Doc. Nos. 12, 13.

**3. FACTUAL BACKGROUND**

Petitioners, together with their two minor children, were admitted to the United States on B-2 (tourism) visas on August 1, 2023. See Pet. at ¶ 2. Those visas authorized them to stay in the country until January 31, 2024. Id. On October 10, 2023, Petitioner Chen applied for asylum and withholding of removal for him, his wife (Petitioner He), and their two children. Id. at ¶ 3; Ex. "3." In acknowledging receipt of that application, immigration authorities told the family they "may remain in the U.S. until [their] asylum application is decided," but that the pendency of their asylum application "does not preclude U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) from placing you in removal proceedings." Id. at Ex. "3."

Petitioners continued to live in the United States for three years thereafter, residing at the same address in Rowland Hills, California, as that listed on the receipt for their asylum application. That ended on October 26, 2026, however. At approximately 6:00 that morning, agents of the Enforcement and Removal Operations division of ICE arrived at Petitioners' Rowland Hills home "to conduct a targeted apprehension" of both Petitioners. See Doc. No. 8-1 at ECF pp. 18, 23. Petitioner He took her two minor children to school that morning. See Pet. at ¶ 5. As she was returning home shortly after 8:00 a.m. after dropping them off, ICE

agents approached her, conducted a field interview, and after she confirmed her identity to them, arrested her in front of her house. Id.; Doc. No. 8-1 at ECF. p. 23.

When his wife had not returned home by approximately 8:40 that morning, Petitioner Chen called her, but she did not answer. See Pet. at ¶ 6. Petitioner Chen therefore decided to go out and look for her. Id. Mr. Chen walked out of his home to his car, which was parked on the street in front of his home. Id.; Doc. No. 8-1 at ECF. p. 18. Just after he started his car, ICE agents activated their red and blue emergency lights to conduct a vehicle stop, approached his vehicle, and after Petitioner Chen confirmed his identity to them, ordered him out of the car and arrested him. See Pet. at ¶ 6; Doc. No. 8-1 at ECF pp. 18-19.

Both Petitioners were then taken to ICE's Los Angeles Field Office for processing. See Doc. No. 8-1 at ECF pp. 19, 24; Pet. at ¶ 7. Ultimately each was taken to the ICE Processing Center in Adelanto, California, where they both remain detained. See Pet. at ¶ 7.

Petitioners' two minor children were both at school for the day when ICE arrested both of their parents after their mother dropped them off at school. They have since been in the temporary care of their landlord. Id. at ¶ 8.

Neither Petitioner received or saw an administrative warrant for their arrest at the time they were detained, nor any written custody determination. Id. at ¶ 10. Respondents submitted with their Answer copies of administrative Arrest Warrants (Form I-200), Notices to Appear (Form I-862) and Records of Deportable/Inadmissible Alien (Form I-213) for each Petitioner. See Doc. No. 8-1. The Warrant for Petitioner Chen is dated October 25, 2026. See Doc. No. 8-1 at ECF p. 13. The Notice of Appearance for Petitioner Chen, however, is dated October 26, 2026. See Doc. No. 8-1 at ECF p. 3. The Warrant and Notice to Appear for Petitioner He are both dated October 26, 2026. See Doc. No. 8-1 at ECF pp. 8, 15.

**4. CLAIMS AND RELIEF SOUGHT**

Petitioners claim that their confinement violates the Fifth Amendment to the United States Constitution, and seek a writ compelling their immediate release on that basis. See Pet. at 18:16-20; 22:20-22. Through their Petition and Reply (which the Court deemed to be an amendment to their Petition and allowed Respondents an opportunity to respond to in a Supplemental Answer, see Doc. No. 11), they argue both that the statutory requirements for detention under 8 U.S.C. § 1226(a) are not met because they were arrested without an administrative warrant, and that due process required notice and a meaningful opportunity to be heard before being taken into detention. See Pet. at Part V; Reply (Doc. No. 9 ) at Part III.B.

**5. LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioners make such reviewable claims here, and Respondents do not contest the point.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because this requirement is "prudential" and not a "jurisdictional prerequisite," however, it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional."). Here, Respondents do not address the

exhaustion requirement in their Answer other than to argue that Petitioners must first request a bond hearing, and it is unclear what administrative remedy Petitioners may have for the particular claims they raise here challenging the legality of their detention at the outset. Thus, the Court finds that any failure by Petitioners to exhaust available administrative remedies in this matter (assuming there are any) is not a bar to this Petition. The Court therefore proceeds to consider the merits of the Petition.

**6. DISCUSSION**

The Due Process Clause of the Fifth Amendment prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process ... ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step determines what process is due. Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**A. The Constitutionally Protected Interest at Issue**

In the first step, it is necessary to determine what particular interest the claimant asserts he or she is being deprived of. In many immigration-related habeas corpus cases before this Court, noncitizens have previously been granted some form of conditional release from immigration detention, whether by parole, release on recognizance, release on order of supervision, or in some cases, deferred action. They were then re-detained, effectively revoking that conditional release. In those cases, many Courts – including this one – have found that such conditional release interest is a constitutionally protected interest that may only be revoked with due process of law. Such courts then proceed to apply the three-step balancing test described in Mathews v. Eldridge[2] to determine what process is due before the noncitizen may constitutionally be deprived of that interest.

That is not the case here, however. Neither Petitioner claims that he or she was ever granted any form of conditional release which Respondents have now revoked. Instead, Petitioners claim a more general liberty interest – remaining out of detention pending determination of their asylum application. See Reply at 16:14-17:6. They note that the receipt for their application states they "may remain in the U.S. until [their] asylum application is decided." Id. at 16:17-18. They omit, however, the next sentence in that receipt – that having a pending asylum

---

[2] 424 U.S. 319, 334-35 (1976).

application "does not preclude [ICE or CBP] from placing you into removal proceedings." Pet. at Ex. "3," ECF p. 30.

The Court acknowledges that there is presently a difference of opinion, including among Judges within this District, regarding whether noncitizens who overstay their visas while they seek asylum have a constitutionally protected interest in remaining out of detention that can only be revoked upon prior notice and opportunity to be heard. Many judges here have recently held there is such a constitutionally protected interest. See, e.g., Kositsin v. Santacruz, no. 5:26-cv-5242-PD, 202 WL 2866467 (C.D. Cal. Sept. 23, 2026); Tang v. Mullin, No. 5:26-CV-04881-KES, 2026 WL 2666872 (C.D. Cal. Sept. 10, 2026); Zhao v. Janecha, No. ED CV 26-5025-E, 2026 WL 2666865 (C.D. Cal. Sept. 9, 2026); Zhao v. Mullin, No. 5:26-CV-05531-DTB, 2026 WL 3061858 (C.D. Cal. Oct. 13, 2026); and Tu v. Janecha, No. 5:26-CV-04343-ACCV, 2026 WL 2656614 (C.D. Cal. Sept. 8, 2026). Many Judges have also recently held the opposite, however, because there has been no affirmative grant of a release interest by the government in such cases. See, e.g., Melkumyan v. Semaia, No. 5:26-CV-03019-MBK, 2026 WL 1772761 (C.D. Cal. June 16, 2026); Wang v. Janecha, No. 5:26-cv-4447-BFM, 2026 WL 2584800 (C.D. Cal. Aug. 31, 2026); Sun v. Janecka, No. 5:26-CV-4916-RAO, 2026 WL 2622244 (C.D. Cal. Sept. 4, 2026); and Jesus v. Santacruz, No. 5:26-CV-02181-AH-BFM, 2026 WL 1947628 (C.D. Cal. July 2, 2026).

Upon its own consideration of the question, this Court finds the visa-overstay situation is materially different from the conditional-release situation as it relates to the creation of a constitutionally protected interest. This is in particular because in the conditional-release situation, there has been not only an affirmative decision by immigration authorities to grant conditional release, but also that such decision "reflect[s] a determination by the government that [the noncitizen] was neither a flight risk nor a danger to the community." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). There has been no such determination with a non-

citizen who overstays his or her visa, at least not on the record before this Court with Mr. Chen and Ms. He. This Court is not convinced, at least on the facts presently before it, that the rule in conditional-release cases should be extended to cases where no prior affirmative determination of lack of flight risk and lack of danger has been made, including in visa-overstay cases like this one.

That does not mean, however, that Petitioners Chen and He do not have any constitutionally protected interest, and that they may be arrested and detained without any form of due process. It means only that the rule that has been developed over many cases recently requiring prior notice and hearing in the conditional-release situation does not automatically apply here. Petitioners, like everyone present in the United States, still have a constitutional interest generally in their liberty, including while their immigration case (on their asylum petition) proceeds. Since they have been arrested and are presently being held in immigration detention, there is no question that they are being deprived of that liberty. It still is necessary to determine what process is due before they may be deprived of that interest.

**B. The Process Due**

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). In the absence of a law providing a specific process for a given deprivation, courts typically apply the balancing test in Mathews v Eldridge to determine what process is due. Congress has, however, provided a specific process for revocation of the particular interest at issue here – detention of a noncitizen arrested in the interior pending completion of immigration-court proceedings against him or her. Title 8 USC. 1226(a), and implementing regulations thereunder, provides such a process. The Ninth Circuit has already done the work of applying the Mathews test to that process and found it to be constitutional. See Rodriguez Diaz v Garland, 53 F.4th 1189. 1213 (9th Cir. 2022). Thus, the question in this case is whether Respondents followed the

statutory process under Section 1226(a) in arresting and detaining Petitioners Chen and He. As discussed below, the answer to that question is no as to both.

### C. Petitioners Did Not Receive the Process They Were Due Before Being Deprived of Their Liberty Interest

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Detention under that Section, therefore, is dependent upon the existence of "a warrant issued by the Attorney General."

Petitioners each initially claimed that they were arrested without any warrant because they never received or saw a warrant prior to filing their Petition. See Pet. at ¶ 10. Respondents argued in their Answer, however, that "Petitioners were immediately issued a Warrant for Arrest and Notice to Appear upon their detention," and attached copies of those documents to the Answer. See Doc. No. 8 at 2:16-17; Exs. "A" through "D" thereto (Doc. No. 8-1). The warrants Respondents offer for each Petitioner are administrative Warrants for Arrest of Alien (Form I-200). See Doc. No. 8-1 at ECF pp. 13 (Petitioner Chen) and 15 (Petitioner He).

A warrant of this type is for the arrest of a noncitizen who is charged with removability by a Notice to Appear. In fact, each says on its face that the issuing officer has "determined that there is probable cause to believe" each Petitioner "is removable from the United States. This determination is based upon: the execution of a charging document to initiate removal proceedings against the subject." Id. (emphasis added). By regulation, such a warrant may be issued "at the time of the issuance of the notice to appear [i.e., the charging document], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 1236.1(b)(1). In this way it is like a judicial arrest warrant, which is issued only after a charging document is filed. See Fed. R. Crim. P. 4 (arrest warrant

following a criminal complaint); Fed R. Crim. P. 9 (arrest warrant following an indictment).

As noted above, the warrant Respondents rely on to support Petitioner Chen's detention is dated October 25, 2026. See Doc. No. 8-1 at ECF p. 13. The Notice to Appear for Mr. Chen, however, is dated October 26th – the date of the arrest and the day after the issuance of the warrant. Thus, at the time the administrative warrant Respondents rely on for the arrest of Petitioner Chen was issued, there was no Notice to Appear — no "charge" on which to arrest Petitioner. Accordingly, the warrant on which Respondents rely was not properly issued under the Immigration and Nationality Act. Petitioner Chen's arrest, therefore, was warrantless.[3] Petitioner Chen was therefore arrested and detained – deprived of his liberty – without the process he was due as specified in Section 1226(a).

The warrant for Petitioner He does not share the same defect as that for her husband, Mr. Chen, but nevertheless still fails to show that she received the process specified in Section 1226(a) she was due before deprivation of her liberty by arrest and detention. Both the Warrant and Notice to Appear for Ms. He are dated October 26th – the date of her arrest. See Doc. No. 8-1 at ECF pp. 8, 15. While Respondents do not provide any information about the respective timing of the issuance of these documents, it is at least possible that the issuance of the Notice to Appear preceded the issuance of the Warrant such that there was a charging document to support the warrant when it was issued. Additional information on the face of the warrant dispels any such plausibility, however. In addition to stating that the administrative warrant for Petitioner He's arrest is based upon "the execution of a charging document to initiate removal proceedings against" her, the warrant also states that it is based upon "statements made

---

[3] While the INA does authorize warrantless arrests of noncitizens in certain defined circumstances, Respondents do not argue that any of those circumstances are present in this case.

voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Doc. No. 8-1 at ECF p. 15. The only information in the record before the Court about any statement made by Petitioner He are statements made at the time of her arrest. See Doc. No. 8-1 at ECF pp. 23-24. This indicates that the warrant, relying in part for its probable cause determination on "statements made voluntarily by the subject to an immigration officer" was necessarily prepared only after the arrest. Thus, Petitioner He's arrest, like Petitioner Chen's was without a valid warrant, and her detention also did not comply with the process required for detention under Section 1226(a).

Though the reasons are different for each, neither Petitioner received the process they were due as provided in Section 1226(a) before they were deprived of their liberty by immigration arrest and detention. Respondents admit in their Answer that they rely on Section 1226(a) as the authority to detain Petitioners, and offer no alternative basis to hold Petitioners. See Answer at 4:25-6:16. Because Respondents have not complied with the requirements of that authority, however, their detention of Petitioners violates the Constitution or laws or treaties of the United States, and habeas relief is appropriate. See 28 U.S.C. § 2241(c)(3).

**D. Immediate Release is the Appropriate Remedy**

Respondents assert in their Answer that "Petitioners appear to be entitled to request and receive an initial bond hearing pursuant to Rodiguez Vasquez v. Bostock, [183 F.4th 1160] (9th Cir. 2026) (finding 'that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).')." Answer at 4:26-5:2. Why Respondents have not already given Petitioners such a bond hearing, rather than acknowledging their right to one only after they sued, is a question that need not be answered in this case because that relief would not remedy the illegality of

Petitioners' detention from the outset. As discussed above, because Respondents did not comply with the statutory prerequisites to arrest and detain these noncitizens under Section 1226(a) – the sole legal basis they offer to justify Petitioners' detention – the detention was unlawful from the outset. Giving Petitioners a bond hearing now, at which they must demonstrate that they are not a flight risk or danger to the community no less, does nothing to cure the defects in their detention in the first place. Petitioners' detention is unlawful and therefore must end. Immediate release is the only effective remedy.

**7. CONCLUSION**

If Respondents wish to rely on the provisions of 8 U.S.C. § 1226(a), as they do here, to conduct a "targeted operation" to arrest a mother after dropping off her children at school, and then arrest her husband when he comes out of his home to go look for his missing wife, and then hold them both in civil immigration detention – leaving the minor children without any parents to come home to at the end of the school day – they must at minimum comply with the procedural requirements of that statutory scheme. Respondents must first charge them with removability via a Notice to Appear, then obtain a valid administrative warrant to arrest them on that charge. While there are other additional requirements to support such a detention that come later in the process (including an initial custody determination by the arresting officer and a redetermination by an Immigration Judge, neither of which appear to have occurred here), Respondents did not clear even the first hurdle to a lawful detention of either Petitioner on the facts before this Court.

Therefore, on the uncontroverted facts of this case and the applicable law, the Court finds that it is appropriate to GRANT the Petition for Writ of Habeas Corpus as to both Petitioners.

IT IS ORDERED THAT:

1. Respondents shall immediately release Petitioners **Zehua Chen (A# 233-262-890) and Lulu He (A# 233-262-889)**, from immigration custody, as

well as return any to them any personal property and documents seized at the time of their respective October 26, 2026, arrests.

2. Respondents shall provide each Petitioner with a copy of this Order at or near the time of release.
3. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming the release of both Petitioners.

The Court will issue Judgment consistent with this Order.

IT IS SO ORDERED.[4]

DATED: November 23, 2026

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

[4] In light of this Order granting the Petition on its merits, Petitioners' November 7, 2026, Ex Parte Application for Temporary Restraining Order (Doc. No. 10) and November 19, 2026, Request to Expedite Ruling (Doc. No. 15) are DENIED as moot.